**Kimberly TURIC, Plaintiff–Appellee, Cross–Appellant,**

v.

**HOLLAND HOSPITALITY, INC., d/b/a Holiday Inn and Conference Center of Holland, Defendant–Appellant, Cross–Appellee.**

Nos. 94–1424, 94–1467.

United States Court of Appeals, Sixth Circuit.

Argued May 25, 1995.

Decided June 17, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied July 24, 1996.

William J. Heaphy (argued and briefed), Vandeveer & Garzia, Holland, MI, for plaintiff-appellee, cross-appellant.

Sheila A. Kinney (argued and briefed), Patterson, Kinney & Ruga, Grand Rapids, MI, for defendant-appellant, cross-appellee.

Karen M. Moran (argued and briefed), E.E.O.C., Washington, DC, for amicus curiae.

Louise Melling, American Civil Liberties Union Foundation, New York City, Paul Denenfeld, Detroit, MI, for American Civil Liberties Union, American Civil Liberties Union of Michigan in No. 94-1467.

Before: KRUPANSKY, MILBURN, and BATCHELDER, Circuit Judges.

KRUPANSKY, J., delivered the opinion of the court, in which MILBURN, J., joined. BATCHELDER, J., delivered a separate concurring opinion.

KRUPANSKY, Circuit Judge.

Defendant–Appellant, Holland Hospitality, Inc. ("Holland Hospitality"), appealed the district court's award of compensatory damages, punitive damages and backpay to plaintiff, a former restaurant busser and room service attendant at its Holiday Inn in Holland, Michigan, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1991), as amended by the Pregnancy Discrimination Act ("PDA"). The court found that Holland Hospitality discharged Turic because she had become the subject of controversy among the hotel staff as a result of her perpended abortion. The court concluded, as a matter of law, that Turic's termination for the stated reason constituted gender-based discrimination which violated Title VII. Holland Hospitality appealed, asserting Turic's termination resulted from her failure to perform her assigned responsibilities. Holland Hospitality also appealed the court's legal conclusions that Title VII and the broad language of 42 U.S.C. § 2000e–2(a)(1) extend equal protection to contemplated abortions and permit the award of compensatory damages, punitive damages and backpay.[1]

In considering Turic's first assignment of error, this Court notes that Title VII of the Civil Rights Act of 1964 prohibits employers from "discharg[ing] any individual ... because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). In 1978, Congress enacted the Pregnancy Discrimination Act ("PDA"), an amendment to Title VII, to in-

sure that discrimination against women because of pregnancy was covered by Title VII. Section 2000e(k) states:

The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2(h) of this title shall be interpreted to permit otherwise. This subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion: *Provided,* That nothing herein shall preclude an employer from providing abortion benefits or otherwise affect bargaining agreements with regard to abortion.

42 U.S.C. § 2000e(k). The lower court concluded that pregnancy "related medical conditions" included the right to an abortion. The EEOC guidelines interpreting this section, which are entitled to a high degree of deference under *Griggs v. Duke Power,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971), expressly state that an abortion is covered by Title VII:

The basic principle of the [PDA] is that women affected by pregnancy and related conditions must be treated the same as other applicants and employees on the basis of their ability or inability to work. A woman is therefore protected against such practices as being fired ... merely because she is pregnant or has had an abortion.

Appendix 29 C.F.R. 1604 (1986) (emphasis added). Similarly, the legislative history of section 2000e(k) provides:

---

1. Turic cross-appealed the district court's finding that her evidence was insufficient to support her religious discrimination claim. The record disclosed no evidence which contradicted the dis-

trict court's finding. The district court's decision concerning the religious discrimination claim is therefore affirmed.

Because [the PDA] applies to all situations in which women are "affected by pregnancy, childbirth, and related medical conditions," its basic language covers women who chose to terminate their pregnancies. Thus, no employer may, for example, fire or refuse to hire a woman simply because she has exercised *her right to have an abortion.*

H.R.Conf.Rep. No. 95–1786, 95th Cong., 2d Sess. 4, *reprinted in* 1978 U.S.C.C.A.N. pp. 4749, 4765–66 (emphasis added). Thus, the plain language of the statute, the legislative history and the EEOC guidelines clearly indicate that an employer may not discriminate against a woman employee because "she has exercised her right to have an abortion." Additionally, the Supreme Court has already considered the impact of the PDA in broadening the scope of prohibited sex discrimination under Title VII. In *International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991), the Court held that Title VII, as amended by the PDA, "prohibit[s] an employer from discriminating against a woman because of her capacity to become pregnant unless her reproductive potential prevents her from performing the duties of her job." *Id.* at 206, 111 S.Ct. at 1207. In light of the plain language of the statute, the legislative history of the PDA, the EEOC guidelines, and the principles of *Johnson Controls,* the panel concludes that an employer who discriminates against a female employee because she has "exercised her right to have an abortion" violates Title VII.

■ Turic, however, did not claim, nor did the district court find, that she was terminated because she had exercised her right to have an abortion. *Turic v. Holland Hospitality, Inc.,* 849 F.Supp. 544, 551 (W.D.Mich. 1994). (In fact, Turic did not terminate her pregnancy, but carried it to term.) Rather, Turic's claim, and the district court's conclusion, was that she was fired because she contemplated having an abortion. The panel concludes, however, that this distinction has no effect on its result. A woman's right to have an abortion encompasses more than simply the act of having an abortion; it includes the contemplation of an abortion, as well. Since an employer cannot take adverse employment action against a female employee for her decision to have an abortion, it follows that the same employer also cannot take adverse employment action against a female employee for merely thinking about what she has a right to do. As a result, the district court's legal conclusion that Title VII, as amended by the PDA, applies to the action of Holland Hospitality in discharging Turic, is affirmed.

■ The district court's factual findings, including a finding of discriminatory intent in a Title VII nonjury case, are reviewed under a clearly erroneous standard. *Anderson v. City of Bessemer,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it.") In Title VII cases, the plaintiff bears the initial burden of establishing a prima facie case. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 548 (6th Cir. 1991).

■ Once an employee has carried her initial burden, the burden of going forward shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse treatment. *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If the employer satisfies its burden, the presumption of unlawful discrimination is nullified, and the burden returns to the employee to prove that the employer's reason was pretextual. *Id.*

■ In the instant case, the trial judge found that Turic's pondered abortion, which precipitated a controversy among the other employees, was a motivating factor for her discharge. The judge credited evidence that Turic's initial disciplining occurred only after other employees became aware of her contemplated action. Also, the record reflects that poor job performance was not discussed during the first meeting with Turic. At trial, the supervisors admitted that they had later edited Turic's personnel file and "expounded"

on the record to add derogatory information about Turic's prior failure to properly call in sick and her failure to fill coffee urns. Furthermore, the judge, after viewing the defendant's witnesses and weighing their testimony, assigned greater credibility to Turic's evidence. He concluded that Turic was discharged because she was considering an abortion. Because the trial court's factual findings were not clearly erroneous, the court's decision regarding liability under Title VII is affirmed.

■■■ Holland Hospitality has also appealed the award of compensatory damages, punitive damages and backpay. The Civil Rights Act of 1991 amended Title VII to authorize an award of compensatory damages where an employer is found to have "engaged in unlawful intentional discrimination. . . ." 42 U.S.C. § 1981a(a)(1). To be eligible for compensatory damages, Turic was required to prove that Holland Hospitality's unlawful actions caused her emotional distress. *Carey v. Piphus*, 435 U.S. 247, 263–64, 98 S.Ct. 1042, 1052–53, 55 L.Ed.2d 252 (1978). A plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard. *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir.1994). A trial court's finding of fact on this issue is not reversible error "unless it manifests plain injustice, or is so grossly excessive as to be clearly erroneous." *Id.; Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

■■■ The court, in the instant proceeding, found that as a young, unwed mother who was walking an "economic tightrope" and who had just discovered she was pregnant for a second time, Turic was in a particularly vulnerable position and was highly dependent upon her job. Vulnerability is relevant in determining damages. *See Pratt v. Brown Machine Co.*, 855 F.2d 1225, 1240 (6th Cir. 1988); *EEOC Policy Guide* at 10–11, *reprinted in* 8 Fair Employment Practices Manual (BNA) at 405:7096–97 ("The fact that the complaining party may be unusually emotionally sensitive and incur great emotional harm from discriminatory conduct will not absolve the respondent from responsibility for the greater emotional harm."); *Williamson v. Handy Button Machine Company*, 817 F.2d 1290, 1294 (7th Cir.1987) ("Perhaps [plaintiff] was unusually sensitive, but a tortfeasor takes its victims as if finds them. . . . In some cases unusual sensitivity will enhance the loss; in others unusual hardiness will reduce it; payment of the actual damage in each case will both compensate the victim and lead the injurer to take account of the full consequences of its acts.") citing *Vosburg v. Putney*, 80 Wis. 523, 50 N.W. 403 (1891) and *Stoleson v. United States*, 708 F.2d 1217, 1221 (7th Cir.1983). Turic's vulnerability is particularly relevant in this case, because her supervisors had direct knowledge of her vulnerability before they discharged her. The trial judge did not err, therefore, in considering the unusual economic and emotional sensitivity of this plaintiff.

■■■ It is well settled that Title VII plaintiffs can prove emotional injury by testimony without medical support. *Moody v. Pepsi–Cola Metropolitan Bottling Co.*, 915 F.2d 201, 210 (6th Cir.1990); *Williams v. Trans World Airlines*, 660 F.2d 1267, 1273 (8th Cir.1981). However, damages for mental and emotional distress will not be presumed, and must be proven by "competent evidence." *Carey v. Piphus*, 435 U.S. 247, 263–64 & n. 20, 98 S.Ct. 1042, 1052–53 & n. 20, 55 L.Ed.2d 252 (1978); *Rodgers v. Fisher Body Div., General Motors Corp.*, 739 F.2d 1102 (6th Cir.1984). In the instant case, Turic offered evidence which satisfied *Carey*. Witnesses testified that Turic was extremely upset and frightened after being discharged, and that she ran from the meeting in tears. The Supreme Court in *Carey* instructed that such witness testimony bolsters a finding of emotional distress: "Although essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others." *Carey*, 435 U.S. at 264 n. 20, 98 S.Ct. at 1052 n. 20. Further, Turic testified that she continued to suffer nightmares, weight loss during her pregnancy (an undesirable occurrence often leading to low birth weight of the baby), and excessive nervousness. This testimony distinguishes the instant case from *Rodgers*, 739 F.2d at 1108, in which the plaintiff failed to testify that he

suffered any manifestations of his alleged mental distress, and from *Erebia v. Chrysler Plastic Products Corp.*, 772 F.2d 1250 (6th Cir.1985), wherein the plaintiff testified merely that he was "highly upset" about racial slurs made at his workplace. *Id.* at 1259. *See also DeNieva v. Reyes*, 966 F.2d 480, 487 (9th Cir.1992) (plaintiff testified to suffering emotional distress manifested by insomnia, dizziness and vomitting and received $50,000 compensatory damages); *Secretary of HUD v. Blackwell*, 908 F.2d 864, 872–73 (11th Cir.1990) ($40,000 award upheld on basis of testimony regarding humiliation, insomnia and headaches); *Moody v. Pepsi–Cola Metropolitan Bottling Co.*, 915 F.2d 201, 210 (6th Cir.1990) ($150,000 award upheld on basis of testimony that plaintiff was shocked and humiliated and forced to live apart from family because of termination). For the above reasons, the amount awarded as compensatory damages is not grossly excessive, and the decision of the court below as to compensatory damages is affirmed.

■ The Civil Rights Act of 1991 also provides for awards of punitive damages where an employer is found to have "engaged in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). A review of the record reveals that, although the actions of Holland Hospitality's employees were duplicitous and disclosed a lack of empathy, they did not rise to the level to support a punitive damages award under the Civil Rights Act of 1991. Therefore, the trial court's award of punitive damages is reversed.

The court's award of 15 months backpay, at $680 per month, reduced by (1) $800 Turic realized from working at Denny's after the baby was born; and (2) the amount attributable to the six weeks she was out of the work force after the birth of her baby was not clearly erroneous in light of her effort to seek employment at various factories and restaurants. The court's decision is therefore affirmed as to backpay.

Accordingly, the decision below is AFFIRMED in part and REVERSED in part.

BATCHELDER, Circuit Judge, concurring.

Title VII prohibits an employer from intentionally taking any adverse employment action against an employee on the basis of a protected attribute of that employee. Because most of the attributes protected under Title VII are both facially clear from the language of the statute and obvious, if not immutable, as a matter of fact, the requirement that the discrimination be intentional is neither ambiguous nor unfair in most Title VII situations, and, indeed, serves as a protection for the employer. An employer cannot argue, with a straight face, that he did not understand from the statute that he could not discriminate against an employee because the employee was, for example, black, or female or Russian Orthodox. In the present case, however, the protected attribute is not expressly set out in the statute, and no court, at the time Holland Hospitality, Inc., discharged Turic, had included a "perpended" or "pondered" or even a contemplated abortion as an attribute protected by the statute. In part, of course, that is because a "perpended" or "pondered" event is not an attribute at all, but a thought.

It is not readily apparent from the language of the statute that thoughts are intended to be covered by its protections. For that matter, it is not readily apparent from the statute that the status of having had an abortion is a protected attribute. As a matter of logic, however, I can accept the conclusion that since the condition of pregnancy is specifically protected, and the EEOC regulations state that the status of having undergone an abortion is protected, the contemplation of the choice to undergo an abortion must also be protected under Title VII. It is nonetheless troubling to conclude, as the next step, that discrimination based on the employee's contemplation of an abortion is "unlawful intentional discrimination" that results, not only in an award of backpay under Title VII, but an award of compensatory damages under 42 U.S.C. § 1981a.

That is particularly so here, where Turic was the center of the vortex and the employer terminated her to get rid of the source of

the uproar. However, because Turic's contemplation of an abortion was the reason for the uproar, Turic's termination (and thus the unlawful discrimination) was, at least in part, due to the "perpended abortion." Since the statute makes no exception for discriminatory acts that an employer would not reasonably have known to be prohibited, Turic's discharge, therefore, was "unlawful intentional discrimination."

I concur in the majority opinion only because, in light of the specific language of 42 U.S.C. § 1981a, I can find no basis on which to hold that Holland Hospitality, Inc., had to have knowledge that Turic's thoughts were protected under Title VII in order for its action to be a violation of the statute.