*-1203
 
 MOORE, Circuit Judge.
 

 Plaintiff-Appellee Ronnie L. Chatman successfully sued Ohio State Trooper Richard Unger under 42 U.S.C. § 1983 for an illegal search which resulted in his arrest on drug charges. Unger appeals, arguing that Chat-man presented insufficient evidence of injury under the applicable law and that the criminal procedure doctrine of inevitable discovery should bar recovery. For the reasons set forth below, we affirm the judgment of the district court.
 

 I. JURISDICTION
 

 The district court had jurisdiction over this federal claim under 28 U.S.C. § 1331. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291.
 

 II. FACTS
 
 [1]
 
 AND BACKGROUND
 

 On November 9,1992, Ohio State Highway Patrol Troopers James Slagle and Richard Unger stopped plaintiff-appellee Ronnie Chatman for speeding on Interstate 75 in Perrysburg Township, Ohio.
 
 [2]
 
 When the two troopers approached the car they smelled beer and asked Chatman and the front-seat passenger, David Clay, to step out of the car. Chatman complied but Clay remained seated and put his hand in his coat pocket. Trooper Slagle, after repeatedly asking Clay to take his hand out of his pocket, and apparently concerned that the man might be armed, grabbed Clay and struggled with him, eventually forcing Clay’s hand from his pocket and discovering 15 grams of crack cocaine in a small plastic bag. The troopers arrested and searched Clay, who was carrying $1,340 in his pocket.
 

 Trooper Unger then frisked Chatman., He found no weapons but took Chatman’s wallet, opened it, and found two plastic bags containing approximately one gram of powder cocaine. He then handcuffed Chatman’s hands behind his back, pushed his head over his car, and told him “I am tired of you people” and to “Shut up.”
 
 [3]
 
 Tr. at 81.
 

 The troopers then searched the car and found a loaded pistol under the front passenger seat and numerous small plastic bags. Chatman and Clay were taken to the county jail, where Chatman remained for three days. A state court convicted Clay of aggravated drug trafficking and sentenced him to one year in prison. Chatman was charged with a drug offense, but the cocaine found in his wallet was suppressed as the product of an illegal search, and all charges were dismissed.
 
 [4]
 
 Chatman was never given a citation or arrested for speeding, driving under the influence, or on any weapons charges.
 

 Chatman brought this suit against Unger and Slagle, claiming that the troopers had violated his right to be “secure ... against unreasonable searches and seizures.” U.S. Const, amend. IV. At trial, the defendants repeatedly asked the district court to grant judgment as a matter of law on a novel theory: if the troopers had searched the passenger compartment of the car pursuant to arresting Clay, they would have discovered the gun and would then have arrested Chatman. They would then have conducted an inventory search of Chatman’s wallet and found the cocaine. Therefore, argued the defendants, the cocaine should have been admitted in Chatman’s state criminal trial under the inevitable discovery doctrine.
 
 See Nix v. Williams,
 
 467 U.S. 431, 440-48, 104 S.Ct. 2501, 2507-11, 81 L.Ed.2d 377 (1984);
 
 United States v. Kennedy,
 
 61 F.3d 494, 497 (6th Cir.1995) (“The inevitable discovery doc
 
 *-1202
 
 trine, an exception to the exclusionary rule, allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means.”) (citing Nix). Had the prosecutor at the state trial argued the inevitable discovery doctrine, the cocaine would have been admitted and Chatman would have been convicted of a drug offense. This conviction would then, according to the state, have served to bar Chatman from filing a § 1983 claim against the officers under
 
 Heck v. Humphrey,
 
 512 U.S. 477, 114 S.Ct. 2364, 129 L.Edüd 383 (1994).
 

 The district court accepted this creative theory but held that the question of whether or not the officers would inevitably have discovered the cocaine was a question of fact for the jury to decide. The ease was submitted to the jury, which returned a verdict in favor of the plaintiff against Trooper Unger, who was ordered to pay $8,500 in compensatory damages.
 
 [5]
 
 Unger appeals this judgment.
 

 III. DISCUSSION
 

 A. Applicability of the Inevitable Discovery Doctrine in Civil Rights Cases
 

 Appellant’s first argument is that the district court should have granted judgment as a matter of law based on
 
 Nix
 
 and
 
 Heck.
 
 We need not address the factual basis for this argument because it is clear to us that the inevitable discovery doctrine is no bar to a § 1983 suit when there has been no prior state trial.
 

 The Supreme Court in
 
 Heck
 
 held that “when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.”
 
 Heck,
 
 512 U.S. at 487, 114 S.Ct. at 2372. This rule rests not on an abstract notion that a conviction somehow erases the harm done by unconstitutional state action, but on the concrete principle that a prisoner may not circumvent the procedural hurdles of modern habeas corpus law by using § 1983 to bring what is essentially a habeas petition.
 
 See id.
 
 at 478, 114 S.Ct. at 2368 (“This case presents the question whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983.”);
 
 id.
 
 at 486, 114 S.Ct. at 2372 (“[Cjivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments.”);
 
 Preiser v. Rodriguez,
 
 411 U.S. 475, 490, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973) (“Congress has determined that habeas corpus [28 U.S.C. § 2254] is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983.”).
 
 Heck
 
 extends the
 
 Preiser
 
 rule to include § 1983 suits which request monetary, rather than injunctive, relief, for reasons of finality, consistency, and comity.
 
 Heck,
 
 512 U.S. at 484, 114 S.Ct. at 2371 (“This requirement ‘avoids parallel litigation over the issues of probable cause and guilt and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.’ ”) (quoting 8 S. Speiser et al., AMERICAN Law op Torts § 28:5, p. 24 (1991)) (internal punctuation omitted);
 
 id.
 
 at 481-82, 114 S.Ct. at 2369-70
 
 (Preiser
 
 controls where “establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction.”). Where there has been no state trial these concerns do not arise, and
 
 Heck
 
 does not apply.
 

 Moreover, the reasoning which supports the use of the Fourth Amendment exclusionary rule and the related inevitable discovery doctrine in criminal eases does not apply in civil rights actions. The Fourth Amendment exclusionary rule is in large part designed to deter unconstitutional police behavior.
 
 See
 
 
 *-1201
 

 Nix,
 
 467 U.S. at 446, 104 S.Ct. at 2510 (noting that the “essential purpose of [Fourth Amendment exclusionary rule] is to deter police misconduct”);
 
 Stone v. Powell,
 
 428 U.S. 465, 492, 96 S.Ct. 3087, 3051, 49 L.Ed.2d 1067 (1976) (“Evidence obtained by police officers in violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease.”). The rule largely reflects a balance between protecting society from police misconduct and the state’s interest in prosecuting criminals.
 
 Nix,
 
 467 U.S. at 443, 104 S.Ct. at 2508 (“This Court has accepted the argument that the way to ensure such protections is to exclude evidence seized as a result of such violations notwithstanding the high social cost of letting persons obviously guilty go unpunished for their crimes.”). Where the exclusionary rule would not significantly advance this deterrent interest, then, the courts have declined to enforce it.
 
 See id.
 
 at 446, 104 S.Ct. at 2510 (“In these circumstances, the societal costs of the exclusionary rule far outweigh any possible benefits to deterrence_”). A necessary part of this calculus is that there are other effective deterrents against police misbehavior which dwarf any incremental gain to be had from excluding evidence, most notably the possibility of civil liability.
 
 Id.
 
 (“Significant disincentives to obtaining evidence illegally— including the possibility of departmental discipline and civil liability — also lessen the likelihood that the ultimate or inevitable discovery exception will promote police misconduct.”). To hold that money damages are not available in such situations would turn
 
 Nix
 
 on its head and both eliminate an important disincentive to police misconduct and leave victims of unreasonable police action without any remedy.
 
 Cf. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,
 
 403 U.S. 388, 395, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971) (“That damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials should hardly seem a surprising proposition. Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty.”);
 
 id.
 
 at 397, 91 S.Ct. at 2005 (“The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.”) (quoting
 
 Marbury v. Madison,
 
 5 U.S. (1 Crunch) 137, 163, 2 L.Ed. 60 (1803)).
 

 For the same reasons,
 
 Heck
 
 would likely not apply even if Chatman had been convicted of a drug offense. A judicial determination that the search of Chatman’s wallet and the subsequent arrest were both 'unconstitutional would make prosecution of his case difficult but would not “have to negate an element of the offense of which he has been convicted,” and would thus not create the conflicts at the heart of
 
 Heck. Heck,
 
 512 U.S. at 486 n. 6, 114 S.Ct. at 2372 n. 6. The elements of an offense are, in general terms, the actus reus and the mens rea. A judicial determination that Unger violated Chatman’s Fourth Amendment rights would not prove, or even suggest, that Chatman lacked either of these.
 
 See Stone,
 
 428 U.S. at 490, 96 S.Ct. at 3050 (“A claim of illegal search and seizure under the Fourth Amendment is crucially different from many other constitutional rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure ....”) (citation omitted);
 
 id.
 
 at 492 n. 31, 96 S.Ct. at 3051 n. 31 (“[I]n the case of a typical Fourth Amendment claim, asserted on collateral attack, a convicted defendant is usually asking society to redetermine an issue that has no bearing on the basic justice of his incarceration.”). An illegal search or seizure affects only what evidence the state may introduce, not whether a prosecution may go forward and a conviction be obtained.
 
 Chambers v. Maroney,
 
 399 U.S. 42, 52-53, 90 S.Ct. 1975, 1981-83, 26 L.Ed.2d 419 (1970) (affirming conviction because “if there was error in admitting the [evidence], the error was harmless”);
 
 Gerstein v. Pugh,
 
 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975) (“[I]llegal arrest or detention does not void a subsequent conviction.”). In a case such as this one, it is likely that
 
 Heck
 
 would not apply.
 
 See Heck
 
 at 487, 114 S.Ct. at 2372 (“[I]f the district court determines that the plaintiff’s action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to
 
 *-1200
 
 proceed.”);
 
 id.
 
 at 487 n. 7, 114 S.Ct. at 2372 n. 7 (“[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the ... conviction.”). Because we decide the ease on other grounds, we need not resolve whether a conviction in this case would have barred this action.
 

 B. Damages for Intangible Injury Under 42 U.S.C. § 1983
 

 Appellant contests the award of $8,500 in damages on a number of grounds. He first argues that plaintiffs seeking to recover for non-physical injury under § 1983 must demonstrate “severe emotional distress,” a term which he takes from state law of intentional infliction of emotional distress.
 
 See Yeager v. Local Union 20, Teamsters,
 
 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) (Under Ohio law, a plaintiff seeking to recover for intentional infliction of emotional distress must show that defendant “by extreme and outrageous conduct intentionally or recklessly eause[d][him] severe emotional distress.”) (quoting Restatement (second) of ToRts § 46(1) (1965)). We review de novo this question of what legal standard is appropriate in § 1983 cases.
 
 See Holmes v. Donovan,
 
 984 F.2d 732, 735 (6th Cir.1993).
 

 Although courts examining claims for damages under § 1983 should look to the common law for guidance,
 
 Memphis Community Sch. Dish v. Stachura,
 
 477 U.S. 299, 306, 106 S.Ct. 2537, 2542, 91 L.Ed.2d 249 (1986);
 
 Carey v. Piphus,
 
 435 U.S. 247, 257-58, 98 S.Ct. 1042, 1049-50, 55 L.Ed.2d 252 (1978), they should not try to fit a constitutional claim into a Procrustean bed of common law tort.
 
 See Carey,
 
 435 U.S. at 258, 98 5.Ct. at 1049 (“In [some] cases it may be appropriate to apply the tort rules of damages directly to the § 1983 action. In other cases, the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law torts.”) (citations omitted);
 
 Bivens,
 
 403 U.S. at 392, 91 S.Ct. at 2002 (“Our cases have long since rejected the notion that the Fourth Amendment proscribes only such conduct as would, if engaged in by private persons, be condemned by state law.”). The elements of a § 1983 claim in this circuit are clear: “1) [Plaintiff] was deprived of a right secured by the federal Constitution or laws of the United States; 2) the deprivation, was caused by a person acting under color of state law; and 3) the deprivation occurred without due process of the law.”
 
 O’Brien v. City of Grand Rapids,
 
 23 F.3d 990, 995 (6th Cir.1994). There is no requirement that the defendant’s conduct be outrageous or that plaintiffs injury be extreme. To the contrary, we have often upheld damages under § 1983 without requiring any such showing.
 
 [6]
 

 In
 
 Meyers v. City of Cincinnati,
 
 14 F.3d 1115 (6th Cir.1994), for example, the city fire department had forced the plaintiff to retire in violation of his First Amendment rights.
 
 Id.
 
 at 1116. Meyers sued under § 1983 and recovered $368,445 in lost pay and $25,000 for “mental anguish, humiliation, and loss of reputation.”
 
 Id.
 
 This Court upheld the damage award, noting that the district court had “found that these damages were caused in part by the substantial unfavorable publicity surrounding Meyers’ constructive discharge,” and that the psychological injuries had caused him to lose ten pounds and to suffer from insomnia.
 
 Id.
 
 at 1119. If Meyers’s psychological injuries were sufficient to allow recovery under § 1983, there is no reason to think that Chatman’s are not.
 
 Cf. Turic v. Holland Hospitality, Inc.,
 
 85 F.3d 1211, 1215 (6th Cir.1996) (“To be eligible for compensatory damages, [plaintiff] was required to prove that [defendant’s] unlawful actions caused her emotional distress.”) (citing
 
 Carey,
 
 435 U.S. at 263-64, 98 S.Ct. at 1052-53);
 
 Holmes v. Donovan,
 
 984 F.2d 732, 739 (6th Cir.1993) (In § 1983 case, “[d]am-ages for emotional distress may be awarded upon a showing of intimidation, marital prob
 
 *-1199
 
 lems, weight loss, loss of sleep, shock, or humiliation.”) (citing cases);
 
 Glasson v. City of Louisville,
 
 518 F.2d 899, 903, 912 (6th Cir.) (If, on remand, plaintiff prevailed in § 1983 action against police she should recover for “emotional and mental distress,” based on her testimony that “she was shocked and frightened by [a police officer’s] conduct[,] and that since that time she has been fearful of participating in any other demonstrations.”), cer
 
 t. denied,
 
 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975).
 

 Other circuits, too, consistently uphold awards for mental suffering in § 1983 cases without requiring that the pain be “severe.”
 
 Bolden v. Southeastern Penn. Transp. Auth.,
 
 21 F.3d 29 (3d Cir.1994), explicitly rejected appellant’s argument:
 

 We disagree that a section 1983 case in which damages for emotional distress are claimed must be analogized to a claim for intentional infliction of emotional distress _■ Moreover, even if we were to agree that this case most closely resembles an intentional infliction of emotional distress ease, we disagree that the methods of proving the elements of such a case must be translated directly to this context....
 
 Carey’s
 
 requirement that actual injury be proven before a plaintiff may recover serves merely to ensure that plaintiffs are not compensated for illusory injury.
 

 Id.
 
 at 35. Other circuits, too, have rejected the notion that intentional infliction of emotional distress standards should govern recovery in § 1983 cases.
 
 See, e.g., Walz v. Town of Smithtown,
 
 46 F.3d 162, 170 (2d Cir.1995) (upholding $102,000 award of damages for emotional distress based solely on plaintiffs’ testimony that they were “shocked” and “so upset ... that [one of them] started shaking”),
 
 cert. denied,
 
 — U.S.—, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995);
 
 Chalmers v. City of Los Angeles,
 
 762 F.2d 753, 761 (9th Cir.1985). These cases all accord with the Supreme Court’s opinion in
 
 Stachura
 
 that “compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering.”
 
 Stachura, 477
 
 U.S. at 307, 106 S.Ct. at 2543 (citation and internal punctuation omitted). Since “the basic purpose of § 1983 damages is ‘to compensate persons for injuries that are caused by the deprivation of constitutional rights,”’
 
 id.
 
 (quoting
 
 Carey,
 
 435 U.S. at 254, 98 S.Ct. at 1047), the severity of harm should govern the amount, not the availability, of recovery. Where no harm is proven, nominal damages will be awarded.
 
 See Farrar v. Hobby,
 
 506 U.S. 103, 112, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). Where any harm is shown, then, damages proportionate to that harm should be awarded.
 

 C. Sufficiency of Evidence
 

 Unger additionally argues in passing that Chatman presented insufficient evidence of injury to justify the award of damages. Appellant’s Br. at 12. We will not disturb a trial court’s finding that plaintiff has presented sufficient evidence of harm “unless it manifests plain injustice, or is so grossly excessive as to be clearly erroneous.”
 
 Turic v. Holland Hospitality, Inc.,
 
 85 F.3d 1211, 1215 (6th Cir.1996) (citation omitted).
 

 Chatman testified at trial that the illegal search and arrest left him nervous, restless, and unable to sleep, and that during the search Unger had handcuffed him roughly and then shoved him. Tr. at 81, 83. Dr. Larry Hamme, a licensed psychologist, then testified that he “believe[d] that the arrest did cause Mr. Chatman to experience a substantial degree of anxiety and depression, a mistrust [of police officers and others], and cause some problem with his sleeping.”
 
 Id.
 
 at 153. John Egnance, doctor of chiropractic, also testified that he had treated Chat-man fourteen times for a mild back injury which, based on what Chatman had said at the time, he attributed to the incident with Trooper Unger.
 
 Id.
 
 at 199-200.
 

 We agree with appellant that the evidence of harm was not especially strong, particularly in fight of Mr. Chatman’s extensive record of prior arrests and convictions. We also agree that Dr. Hamme’s diagnosis of post-traumatic stress disorder is not well supported in the record.
 
 [7]
 
 However, appellant
 
 *-1198
 
 cross-examined both experts thoroughly, on these and other topics, and had the opportunity to challenge their qualifications.
 
 See
 
 Tr. at 164-78, 202-04. Under the highly deferential standard of review we accord jury verdicts, we conclude that the evidence as a whole was sufficient to support the relatively small jury award in this case.
 
 See Tunc,
 
 85 F.3d at 1215 (upholding award for emotional harm where plaintiff was “extremely upset and frightened after being [unlawfully] discharged, and ... she ran from the meeting in tears”);
 
 Walz,
 
 46 F.3d at 169-70 (upholding $102,000 award to three plaintiffs for emotional injury where plaintiffs had been “shocked” and “upset” when defendant refused to issue them a building permit);
 
 Miner v. City of Glens Falls,
 
 999 F.2d 655, 662-63 (2d Cir.1993) (upholding $12,000 award of damages for emotional distress based on plaintiffs testimony that unlawful termination had caused “feelings of inadequacy,” embarrassment, and stress).
 
 Cf Rodgers v. Fisher Body Div., General Motors Corp.,
 
 739 F.2d 1102, 1108 (6th Cir.) (overturning $300,-000 award for emotional harm where the only evidence of such harm was plaintiffs “brief testimony” that he went on welfare and lost his ear when defendant fired him, because the “jury did not have sufficient evidence to place a high dollar value on plaintiffs emotional harm”),
 
 cert. denied,
 
 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 821 (1985);
 
 Nekolny v. Painter,
 
 653 F.2d 1164, 1172-73 (7th Cir. 1981) (finding insufficient evidence of emotional harm where plaintiffs did not present evidence of any specific injury),
 
 cert. denied,
 
 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982).
 

 IV. CONCLUSION
 

 Although the district court erred in instructing the jury as to the inevitable discovery doctrine in this civil suit, this error did not affect the outcome of the case. Plaintiff presented sufficient evidence to support the jury award for emotional harm under the correct standard for'this § 1983 case. The judgment is AFFIRMED.
 

 [1]
 

 . The parties stipulated to most of these facts.
 
 See
 
 Tr. at 343-46.
 

 [2]
 

 . Although Trooper Unger testified that they had "checked [Chatman’s] vehicle at 65 miles per hour, this being a posted 65 miles per hour speed zone,” Tr. at 231, Chatman did not challenge the validity of the initial stop. Trooper Slagle also testified that Chatman was driving at 65 MPH.
 
 Id.
 
 at 274.
 

 [3]
 

 . Appellant Unger claims that he asked Chatman to put his wallet on the hood of his car and Chatman voluntarily did so. Tr. at 235. Because, however, the jury returned a verdict for Chatman, we view the evidence in the light most favorable to Chatman.
 
 Davis v. Mutual Life Ins. Co.,
 
 6 F.3d 367, 374 (6th Cir. 1993).
 

 [4]
 

 .The state court issued a journal entry noting that "[t]he search of the defendant’s wallet that gave rise to his arrest for possession of cocaine was not consentual and was not incident to a lawful arrest nor was it supported by probable cause." Tr. at 344-45.
 

 [5]
 

 . The jury determined that Trooper Slagle had not participated in the illegal search and was not liable. Tr. at 374. Chatman does not appeal this portion of the verdict.
 

 [6]
 

 . The cases which appellant cites in support of his theory demonstrate merely that this court has applied Ohio law in diversity actions and with regard to pendent state law claims.
 
 See Miller v. Currie,
 
 50 F.3d 373, 377 (6th Cir.1995) (diversity action);
 
 I go v. Coachmen Indus., Inc.,
 
 938 F.2d 650, 656-57 (6th Cir.1991) (diversity action);
 
 Gagne v. Northwestern Nat'l Ins. Co.,
 
 881 F.2d 309, 317-18 (6th Cir.1989) (pendent claim).
 

 [7]
 

 . Appellant points out in his reply brief that the illegal search and arrest of Chatman is not the
 
 *-1198
 
 type of traumatic event which could cause PTSD. Appellant's Reply Br. at 5.
 
 See
 
 American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders § 309.81 (4th ed. 1994) ("In Posttraumatic Stress Disorder, the stressor must be of an extreme (i.e., life-threatening) nature.”). However, Dr. Hamme testified not that the search caused Chatman's PTSD, but that it triggered the emergence of a dormant, pre-existing condition. Tr. at 153-54, 180-81. We are not in a position to evaluate this distinction. Had appellant made an objection at trial, Dr. Hamme could further have explained the medical basis for his distinguishing between the cause and the trigger of PTSD. Had appellant raised the argument in his opening brief, Chatman would have had the opportunity to show why such an alleged error should not merit reversal.
 
 See
 
 Fed R. Evid. 103(a), (d). Because, however, appellant raised this objection for the first time in his appellate reply brief, Chatman has had no opportunity to respond. Under these circumstances, there is no reason for us to depart from our well-established practice of refusing to address issues which an appellant raises for the first time in his reply brief.
 
 See Wright v. Holbrook,
 
 794 F.2d 1152, 1156 (6th Cir.1986) ("[Ajpplication of this rule is particularly appropriate when the issue raised for the first time in reply is based largely on the facts and circumstances of the case or when resolution of the issue is not obvious.”).