**EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellee,**

v.

**YENKIN–MAJESTIC PAINT CORPO-
RATION, Defendant–Appellant.**

**No. 94–4087.**

United States Court of Appeals,
Sixth Circuit.

Argued April 12, 1996.

Decided March 6, 1997. *

---

* This decision was originally issued as an "unpublished decision" filed on March 6, 1997. On April 3, 1997, the court designated the opinion as one recommended for full-text publication.

Barbara L. Sloan (argued and briefed), Equal Employment Opportunity Commission, Office of the General Counsel, Washington, DC, for Plaintiff–Appellee.

Fred G. Pressley, Jr. (argued and briefed), Kimberly C. Shumate, Porter, Wright, Morris & Arthur, Columbus, OH, for Defendant–Appellant.

Before: KENNEDY and COLE, Circuit Judges, and ALDRICH, District Judge.**

COLE, Circuit Judge.

In this pregnancy discrimination case, Appellant Yenkin–Majestic Paint Corporation ("Yenkin–Majestic") appeals the district court's judgment in favor of Appellee Equal Employment Opportunity Commission ("EEOC"). For the following reasons, we affirm the judgment of the district court, but remand for further proceedings on the issue of reinstatement.

** The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio,

I.

Yenkin–Majestic manufactures and sells paint and related products. In February 1989, Mike Cianflona, the company's personnel director, and Jerry Askew, its director of operations, interviewed and hired Caroline Sanford to perform secretarial and other duties in its operations division. At that time, there were two other persons who performed secretarial and related duties in the operations division. Although Sanford served as Askew's secretary, she was told when hired that her duties would include service as a back-up secretary for the purchasing and polychemical departments, and as a receptionist in the operations division. Sanford was also told that she would perform some work for chemists working in the company's paint laboratory. In order to work for the chemists, Sanford learned to complete material safety data reports, type paint formulas and other technical documents, and verify arithmetical portions of paint formulas. A significant amount of Sanford's work at Yenkin–Majestic was for its chemists.

On or about August 17, 1989, Sanford informed Askew that she was pregnant. Four days later, Askew withdrew his permission for Sanford to take vacation leave and, for the first time, criticized Sanford for reporting to work late, taking more than one hour for lunch, and abusing personal telephone privileges. Sanford disputed the validity of Askew's criticisms.

Believing that Askew was treating her unfairly, Sanford discussed Askew's criticisms with Cianflona. Although supporting Askew's position, Cianflona suggested that Sanford work out her difficulties with Askew directly because Askew was her supervisor.

During this same time period, Yenkin–Majestic decided to create a technical division and dissolve the operations division. As a part of this reorganization, Askew was transferred to a retail position in another facility. On or about October 30, 1989, Yenkin–Majestic hired Dr. Dale Williamson to manage the newly formed technical division. Williamson informed Cianflona that he had

sitting by designation.

no need for a personal secretary; instead, he preferred a technical secretary who would have experience in the paint laboratory environment and with chemical terminology. Cianflona told Williamson that none of the three secretaries in the operations division possessed such experience or qualifications; however, there was some dispute as to whether Cianflona was aware that Sanford had been performing laboratory-related clerical duties.

On November 27, 1989, Cianflona terminated Sanford's employment due to a "lack of work" resulting from the dissolution of the operations division. Cianflona later admitted this was not the real reason for Sanford's termination, but stated that it was a "corporate decision" to offer this explanation to Sanford rather than to tell her she lacked the skills needed for the technical secretary position. Although Sanford had been busy up until the time of her discharge and involved in ongoing projects, Cianflona terminated Sanford without yet interviewing any candidates for the new position.

On the same date that Sanford was fired, Delana Scott was interviewed for the technical secretary position. Scott was hired and began work at Yenkin–Majestic on December 4, 1989. By Williamson's admission, Scott had only a cursory knowledge of paint components and was never given any duties, at least in the technical division, that were significantly different from the duties that Sanford had performed. According to her testimony, Scott left Yenkin–Majestic in early 1990 because she was receiving inadequate training and saw little future for herself at the company.

Following Scott's departure, Yenkin–Majestic hired a personal secretary for Williamson through an employment agency. The new secretary had no training or experience with paint or chemicals and was never trained to perform any technical work.

The EEOC filed this Title VII action on behalf of Sanford, asserting that Yenkin–Majestic discharged Sanford because of her pregnancy, in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). The district court

appointed a magistrate judge as Special Master for a non-jury trial pursuant to Federal Rule of Civil Procedure 53 and 42 U.S.C. § 2000e–5(f)(5). Following a three-day trial, the magistrate judge issued a report in which he recommended entry of judgment in favor of the EEOC and an award of back pay and reinstatement. Over Yenkin–Majestic's objections, the district court adopted the magistrate judge's report and recommendation, entered judgment for the EEOC, and awarded Sanford back pay and reinstatement. This appeal followed.

## II.

Yenkin–Majestic contends that the district court erred in finding that Yenkin–Majestic intentionally discriminated against Sanford. A finding of intentional discrimination is a finding of fact. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). "Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed. R.Civ.P. 52(a). This standard does not entitle a reviewing court to reverse a district court's findings of fact because the reviewing court is convinced it would have decided the case differently. Anderson, 470 U.S. at 573, 105 S.Ct. at 1511 (" 'In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues de novo.' ") (quoting Zenith Radio Corp. v. Hazeltine Research Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969)). Thus, we will review the district court's findings of fact for clear error and its conclusions of law de novo. Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1165 (6th Cir.1996), amended by 97 F.3d 833 (6th Cir.1996).

In determining that Yenkin–Majestic intentionally discriminated against Sanford on the basis of pregnancy, the district court considered Askew's testimony that Cianflona was as familiar with Sanford's work as was Askew because "he [Cianflona] knew what I [Askew] knew." The district court therefore

was skeptical of Cianflona's assertions that he was unaware of Sanford's qualifications for the technical position, thus determining that the record did not support Yenkin–Majestic's argument that it made an honest mistake in failing to consider Sanford's qualifications. The district court also relied on the fact that the record lacked any other legitimate or illegitimate reasons for discharging Sanford, and that Yenkin–Majestic neither fired Sanford, nor hired Delana Scott, out of a true desire to employ a technical secretary.

The district court's view of the evidence is supported by the record, and we cannot reverse that decision even if convinced that we would have assessed the evidence differently had we been sitting as the trier of fact. *Anderson,* 470 U.S. at 573–74, 105 S.Ct. at 1511–12 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). After reviewing the record as a whole, we therefore cannot conclude that the district court's factual findings are clearly erroneous.

## III.

We now turn to Yenkin–Majestic's claim that the district court's conclusion was contrary to law. Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.,* as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), prohibits gender discrimination, which includes discrimination based on pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k) (1994); *Ensley–Gaines v. Runyon,* 100 F.3d 1220, 1224 (6th Cir.1996). In pregnancy discrimination cases, the plaintiff has the burden of establishing a prima facie case. *Id.* Once the plaintiff has met this burden, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Turic v. Holland Hospitality, Inc.,* 85 F.3d 1211, 1214 (6th Cir.1996). If the defendant articulates a legitimate, nondiscriminatory reason, the plaintiff has the burden of proving that the

proffered reason was a pretext for discrimination. *Ensley–Gaines,* 100 F.3d at 1224; *Turic,* 85 F.3d at 1214. The ultimate burden of persuasion, however, remains with the plaintiff. *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987).

Yenkin–Majestic does not contest the district court's conclusion that the EEOC established a prima facie case of discrimination.[1] Instead, Yenkin–Majestic argues that the district court's finding of pretext was insufficient to establish intentional discrimination.

"Pretext may be shown 'either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1082 (6th Cir. 1994) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). In order to challenge the credibility of an employer's explanation, the plaintiff must show by a preponderance of the evidence: (1) the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the adverse employment action; or (3) the proffered reasons were insufficient to motivate the adverse employment action. *See Manzer,* 29 F.3d at 1084 (quoting *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 513 (7th Cir.1993)).

The evidence in this case—specifically, Yenkin–Majestic's decision to give Sanford a false reason for her termination and the issuance of Sanford's first unfavorable evaluation shortly after she notified her superiors of her pregnancy—supports the district court's conclusion that Yenkin–Majestic's proffered explanation of "corporate restructuring" was a pretext for discrimination. In addition, the likelihood that Cianflona was aware of the type of duties that Sanford performed, Yenkin–Majestic's unpersuasive claim that company executives made an honest mistake when they failed to consider Sanford for the technical position, the deci-

---

1. A prima facie case of discrimination can be established by showing: (1) plaintiff was a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) plaintiff was qualified for the position; (4) plaintiff was replaced by a person outside the protected class. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992).

sion to fill the technical position with someone who was no more qualified to serve as a technical secretary than Sanford, and the lack of some other legitimate or illegitimate reason for its actions, provide additional support for the conclusion that the proffered reason was a pretext for discrimination. In the absence of any other credible explanation, this evidence supports a finding of pretext.

■ Moreover, Yenkin–Majestic's efforts to label Sanford's termination as a business decision does not insulate the decision from the district court's conclusion that Yenkin–Majestic fired Sanford because of her pregnancy rather than a lack of qualifications. Although it is true that a factfinder should refrain from probing an employer's business judgment, a decision to terminate an employee based upon unlawful considerations does not become legitimate because it can be characterized as a business decision. *Hartsel v. Keys,* 87 F.3d 795, 801 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997) ("The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons.").

Nonetheless, Yenkin–Majestic argues that the EEOC is required to do more than impugn the proffered reasons for Sanford's discharge; the EEOC must provide additional evidence of discriminatory animus. Yenkin–Majestic argues that the absence of any additional proof of discrimination precluded the district court from making a determination of intentional discrimination. In so arguing, Yenkin–Majestic misconstrues the controlling precedent.

In *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court rejected the "pretext-plus" approach advanced by Yenkin–Majestic and held:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. *Thus, re-*

> *jection of the defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination . . . 'no additional proof of discrimination is required. . . .'*

*Id.* at 511, 113 S.Ct. at 2749 (emphasis added).

Accordingly, the law allows a factfinder to infer intentional discrimination from proof of the prima facie case coupled with a disbelief of the proffered reason for the employer's action, but such an inference is not required. *Manzer,* 29 F.3d at 1083 ("[O]nce the employer has come forward with a nondiscriminatory reason . . . the plaintiff must produce sufficient evidence from which the [trier of fact] may reasonably reject the employer's explanation.").

Thus, we conclude that Yenkin–Majestic's arguments are without merit. EEOC established a prima facie case of discrimination and Yenkin–Majestic's proffered reasons were not the actual motivation for Sanford's discharge. Accordingly, EEOC has demonstrated pretext from which intentional discrimination may be inferred.

## IV.

■ Next, we address the issue of reinstatement. Sometime during the course of this action, Sanford began suffering from an unrelated disability. Yenkin–Majestic argues that the district court abused its discretion by adopting the magistrate judge's recommendation that required Yenkin–Majestic to reinstate Sanford within ninety days after notice of the cessation of her disability. Although Yenkin–Majestic objected to the magistrate judge's recommendations in general, Yenkin–Majestic did not specifically object to the issue of reinstatement. EEOC thus argues that Yenkin–Majestic waived this objection by failing to raise it before the district court. Despite Yenkin–Majestic's failure to raise this objection, we find that the issue of reinstatement presents particular difficulties in the present case. We therefore choose to exercise our discretion and address this issue. *See Foster v. Barilow,* 6 F.3d 405, 407 (6th Cir.1993) ("In general, '[i]ssues not presented to the district court but raised for the

first time on appeal are not properly before the court.' We have on occasion, deviated from the general rule in 'exceptional cases or particular circumstances' or when the rule would produce 'a plain miscarriage of justice.'")

■ One of the central goals of Title VII is to make persons whole for injuries suffered because of unlawful employment discrimination. *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1158 (6th Cir.1985). To achieve this objective, district courts can exercise broad discretionary authority when fashioning the appropriate relief. *Fleming v. Ayers & Assoc.*, 948 F.2d 993, 998 (6th Cir. 1991). Although reinstatement is the favored equitable remedy, it is not necessarily appropriate in every case. *Roush v. KFC Nat'l Management Co.*, 10 F.3d 392, 398 (6th Cir.1993); *Fleming*, 948 F.2d at 998.

■ This action began four years before the district court adopted the magistrate judge's report. Sanford began suffering from an unrelated disability after she was terminated, and it is unclear whether or when this disability is expected to end. The reinstatement order requires Yenkin–Majestic to reinstate Sanford within ninety days after notice of the cessation of her disability. However, the extended duration of this litigation, the open-ended nature of the reinstatement order, and the possibility that Sanford will remain indefinitely disabled guide us to the conclusion that a remedy may exist which would better suit the realities of the parties' circumstances; an evidentiary hearing as to the current status of the parties is therefore appropriate. Accordingly, we remand the question of the appropriateness of the reinstatement order for further factual determinations and balancing of the equities.

### V.

We **AFFIRM** the judgment of the district court, and **REMAND** the question of reinstatement for further proceedings consistent with this opinion.