966 F.2d 480
 Yolanda U. DeNIEVA, Plaintiff-Appellee,
v.
Charles REYES, Acting Chief of Immigration, Office of
Immigration and Naturalization in his official and
individual capacities; Government of the Commonwealth of
the Northern Mariana Islands, Defendants-Appellants.
 No. 90-16041.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 7, 1991.
Decided June 5, 1992.
 
 James B. Parsons, Asst. Atty. Gen., Com. of Northern Mariana Islands, Saipan, MP, for defendants-appellants.
 Lecia M. Eason, Wiseman and Eason, Saipan, MP, for plaintiff-appellee.
 Appeal from the United States District Court for the Northern Mariana Islands.
 Before: ALARCON, D.W. NELSON and CANBY, Circuit Judges.
 CANBY, Circuit Judge.
 
 
 1
 The Government of the Commonwealth of the Northern Mariana Islands (CNMI) and Charles Reyes, the Acting Chief of its Immigration and Naturalization Office appeal the district court's summary judgment holding them liable to plaintiff Yolanda U. DeNieva and a subsequent jury award of $50,000. We affirm the judgment against Reyes in his individual capacity, and reverse the judgment insofar as it runs against the CNMI.
 
 FACTS
 
 2
 DeNieva is a Philippine citizen who has a Philippine passport and who resides in the CNMI. In 1988, Reyes began an investigation into allegations that, first, DeNieva might be involved in an international operation to import workers to the CNMI on the basis of falsified or forged documents and, second, that DeNieva's passport might have been falsified. Reyes requested that DeNieva come to his office and, at that meeting (on June 21, 1988), DeNieva gave Reyes her passport and entry papers.
 
 
 3
 A few days later, DeNieva requested that Reyes return her papers and passport, but Reyes declined to do so. On July 1, 1988, DeNieva filed the complaint initiating this lawsuit and sought a temporary restraining order returning her documents. In the few hours between the filing of the motion for a TRO and the hearing on it, a CNMI officer arrested DeNieva, charging her with possession of a false passport and other offenses. The Commonwealth Trial Court, after a hearing, held that there was probable cause to arrest DeNieva. All of the charges against DeNieva were eventually dismissed.
 
 
 4
 On October 19, 1988, CNMI officials relinquished possession of DeNieva's passport and entry permit. DeNieva pursued her § 1983 claim and, following discovery, DeNieva and the defendants filed cross-motions for summary judgment. The district court denied the defendants' motion and granted DeNieva's motion in part, holding that her constitutional right to travel was violated during the 11-day period between the date of confiscation of DeNieva's passport and the date of her arrest. The court also found that there could be no liability for the period after the arrest because of the finding of probable cause. The only remaining issue--the amount of damages that DeNieva suffered for the 11-day period--was sent to the jury, which awarded DeNieva $50,000.
 
 
 5
 The defendants filed a motion for a new trial, which the district court denied. CNMI and Reyes then filed a timely notice of appeal to this court.
 
 DISCUSSION
 
 6
 On appeal, the defendants contend that: (1) the court has no jurisdiction over either the CNMI or Reyes in his official capacity because the CNMI is not a "person" within the meaning of 42 U.S.C. § 1983; (2) the CNMI is protected from suit by the doctrine of sovereign immunity; (3) Reyes is protected from suit against him in his individual capacity by qualified immunity; (4) Reyes did not violate DeNieva's constitutional rights; (5) the district court erred by refusing to admit testimony that DeNieva could have traveled despite the loss of her passport; and (6) the evidence did not support the jury's award of $50,000. We conclude that DeNieva can maintain this suit only against Reyes in his individual capacity but affirm the finding of liability and the award of damages against him.
 
 I. Jurisdiction
 
 7
 The defendants challenge the district court's conclusion that DeNieva can maintain her suit against the CNMI and against Reyes in his official capacity.[1] The jurisdictional basis for DeNieva's claims against Reyes and the CNMI is 42 U.S.C. § 1983 (1988), which provides in relevant part that
 
 
 8
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....
 
 
 9
 DeNieva, relying on Fleming v. Department of Public Safety, Commonwealth of the Northern Mariana Islands, 837 F.2d 401, 406-07 (9th Cir.) (finding that CNMI is a "person" under § 1983), cert. denied, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 212 (1988), contends that the CNMI is a "person" within the meaning of § 1983 and, therefore, is subject to suit under § 1983. This argument is unmeritorious in light of Will v. Michigan Department of State Police, 491 U.S. 58, 68-70, 109 S.Ct. 2304, 2310-11, 105 L.Ed.2d 45 (1989), which held that states are not "persons" within the meaning of § 1983, and Ngiraingas v. Sanchez, 495 U.S. 182, 192, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990), which held that the Territory of Guam is not a "person" under § 1983. Fleming's conclusion was based on, first, the implicit finding in Bunyan v. Camacho, 770 F.2d 773 (9th Cir.1985), cert. denied, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986), that § 1983 applies to Guam; and, second, § 502(a)(2) of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, reprinted as amended in 48 U.S.C. § 1681 (1988), which applies to the CNMI "those laws ... which are applicable to Guam and which are of general application to the several States as they are applicable to the several States." (Emphasis added). Will and Ngiraingas establish that neither Guam nor the states are "persons" within the meaning of § 1983. As a result, § 502(a)(2) of the CNMI covenant, which had formed the basis of the Fleming opinion, indicates that the CNMI is not a "person" under § 1983. We conclude that, in light of Will and Ngiraingas, the CNMI is not a "person" within the meaning of § 1983, and Fleming is no longer good law on this issue. Neither the CNMI nor its officers acting in their official capacity can be sued under § 1983. Will, 491 U.S. at 71, 109 S.Ct. at 2311-12 (suit against officer in official capacity "is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citation omitted).
 
 
 10
 Reyes, however, is a "person" for the purposes of a suit against him in his individual capacity. See Hafer v. Melo, --- U.S. ----, 112 S.Ct. 358, 365, 116 L.Ed.2d 301 (1991) ("[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.") We need consider only briefly the remaining jurisdictional requirements for a § 1983 claim against Reyes in his individual capacity: that Reyes acted "under color of" CNMI law,[2] and that the law of the CNMI is the law of a "State or Territory," within the meaning of § 1983. With respect to the first requirement, there is no doubt that Reyes, who confiscated DeNieva's passport pursuant to his authority as Acting Chief of Immigration for the CNMI, acted under color of CNMI law. Reyes does not contend otherwise, and there would be no basis for such an assertion. Regarding the second requirement, § 502(a)(2) of the CNMI covenant provides that "those laws ... which are applicable to Guam and which are of general application to the several states" apply to the CNMI. Because § 1983 applies to Guam and to the states, we find that, under § 502(a)(2), § 1983 also applies to the laws of the CNMI. Thus, § 1983 provides jurisdiction for DeNieva's claims against Reyes in his individual capacity.
 
 
 11
 We conclude, therefore, that the district court erred in ruling that it had jurisdiction over DeNieva's claims against the CNMI and Reyes in his official capacity.[3] DeNieva can maintain this suit only against Reyes in his individual capacity.[4]
 
 II. Qualified Immunity[5]
 
 12
 "When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses." Graham, 473 U.S. at 166, 105 S.Ct. at 3105. In this case, Reyes contends that he is entitled to qualified immunity from DeNieva's claims against him and, therefore, that the district court erred in ruling that he was not immune from suit.
 
 
 13
 As an initial matter, we must consider DeNieva's argument that Reyes waived his right to appeal the denial of qualified immunity. DeNieva contends that, because Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985), held that a denial of qualified immunity is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 (1988), the time limit for the filing of an appeal began to run as soon as the district court denied Reyes' summary judgment motion, so that the time for appeal elapsed long before entry of the final judgment. We reject this argument because it would transform the permissive rule of Mitchell--that a defendant may appeal a denial of qualified immunity--into a requirement of immediate appeal that Mitchell does not announce (or even intimate) and that would ignore principles of judicial economy by creating delays that waste the time and resources of the courts and the litigants. Other courts considering this issue have come to a similar conclusion. See, e.g., Kurowski v. Krajewski, 848 F.2d 767, 773 (7th Cir.) (holding that "a public official may raise questions of immunity on appeal from a final judgment, even though he bypassed an opportunity to take an interlocutory appeal"), cert. denied, 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988); Zayas-Green v. Casaine, 906 F.2d 18, 25 (1st Cir.1990) (same). But cf. Kennedy v. City of Cleveland, 797 F.2d 297, 304-06 (6th Cir.1986) (district court did not err in striking motion to reconsider denial of qualified immunity because defendants so moved more than 30 days after denial of qualified immunity), cert. denied, 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987). We conclude, therefore, that a defendant can appeal the denial of qualified immunity either immediately upon the denial or after final judgment.
 
 
 14
 We turn, then, to the district court's ruling that Reyes was not protected by qualified immunity. The Supreme Court delineated the scope of qualified immunity for government officials in Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987):
 
 
 15
 The contours of the right [allegedly violated] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
 
 
 16
 (Citation omitted). We have interpreted this standard as providing that, "regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991). Accord Floyd v. Laws, 929 F.2d 1390, 1394 (9th Cir.1991); Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988).
 
 
 17
 Thus, as we stated in Romero,
 
 
 18
 [t]he qualified immunity test necessitates three inquiries: (1) the identification of the specific right allegedly violated; (2) the determination of whether that right was so 'clearly established' as to alert a reasonable officer to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue.
 
 
 19
 931 F.2d at 627.
 
 
 20
 A. Did DeNieva Identify a Specific Right, and Was it Clearly Established?
 
 
 21
 We can consider the first two prongs of the Romero test together, as both raise the question of Reyes' violation of a clearly established right. At the outset, we note that Reyes' retention of DeNieva's passport infringed upon her ability to travel internationally. Reyes does not suggest otherwise, and there would be no basis for such an argument, anyway: Without her passport, she could travel internationally only with great difficulty, if at all. With respect to the substantive right at issue, the Supreme Court has explicitly recognized the right to international travel since 1958, when, in ruling that the Secretary of State was not authorized to deny passports to members of the Communist Party, it stated that "[t]he right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment." Kent v. Dulles, 357 U.S. 116, 125, 78 S.Ct. 1113, 1118, 2 L.Ed.2d 1204 (1958). Moreover, the Court has consistently treated the right to international travel as a liberty interest that is protected by the Due Process Clause of the Fifth Amendment. See, e.g., id.; Aptheker v. Secretary of State, 378 U.S. 500, 505-508, 84 S.Ct. 1659, 1663-1665, 12 L.Ed.2d 992 (1964) (rejecting limitations on right to international travel--in the form of restrictions on passports--as inconsistent with Due Process Clause); cf. Califano v. Aznavorian, 439 U.S. 170, 176, 99 S.Ct. 471, 474-75, 58 L.Ed.2d 435 (1978) (noting that " '[t]he constitutional right of interstate travel is virtually unqualified. By contrast the "right" of international travel has been considered to be no more than an aspect of the "liberty" protected by the Due Process Clause of the Fifth Amendment.... [and] can be regulated within the bounds of due process.' ") (citations omitted). In light of these cases, we conclude that, by the time of Reyes' seizure of DeNieva's passport in 1988, DeNieva's right to international travel was clearly established as a liberty interest that is protected by the Due Process Clause of the Fifth Amendment of the U.S. Constitution.
 
 
 22
 Reyes acknowledges the existence of a liberty interest in international travel but nevertheless suggests that he did not violate DeNieva's constitutional rights because she was not entitled to either a pre- or post-deprivation hearing. This argument is without merit. The Supreme Court has consistently held that the state cannot deprive a person of a liberty or property interest protected by the Due Process Clause of the Fifth or the Fourteenth Amendment without a hearing. See, e.g., Logan v. Zimmerman Brush Co., 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982) ("As our decisions have emphasized time and again, the Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged."); Wolff v. McDonnell, 418 U.S. 539, 557-58, 94 S.Ct. 2963, 2975-76, 41 L.Ed.2d 935 (1974) ("[S]ome kind of hearing is required at some time before a person is finally deprived of" property or liberty interests); Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) ("A fundamental requirement of due process is 'the opportunity to be heard.' It is an opportunity which must be granted at a meaningful time and in a meaningful manner.") (citation omitted). There have been cases in which the Supreme Court has found that a post-deprivation hearing suffices, e.g., Mathews v. Eldridge, 424 U.S. 319, 349, 96 S.Ct. 893, 909-10, 47 L.Ed.2d 18 (1976), but under no circumstances has the Supreme Court permitted a state to deprive a person of a life, liberty, or property interest under the Due Process Clause without any hearing whatsoever. Such a deprivation without any suggestion of a hearing occurred in the instant case. As Reyes acknowledged at oral argument, he did not provide a pre- or post-deprivation hearing, and there was no mechanism under CNMI law that required him to do so. Reyes took DeNieva's passport for a potentially indefinite period without a hearing, and that period was shortened only because a police officer arrested her. In light of the foregoing, we have no difficulty concluding that DeNieva's right to a hearing was clearly established and that Reyes' retention of her passport without a hearing after she requested its return violated that right.
 
 
 23
 B. Did Reyes Make a Sufficient Showing that a Reasonable Officer in his Position Could Have Believed that his Actions Were Lawful?
 
 
 24
 The final prong of the Romero analysis addresses whether a reasonable officer could have believed that his conduct was lawful. Reyes had the burden of establishing that he met this test, Romero, 931 F.2d at 627, and we find that he failed to do so. Reyes' brief to this court, as well as his moving papers in the district court, focus on his alleged good faith in retaining DeNieva's passport. As Creighton and Romero indicate, however, subjective good faith is irrelevant to the existence of qualified immunity (except insofar as it sheds light on what a reasonable officer might believe). In order to meet his burden, Reyes was required to allege facts or law indicating that a reasonable immigration officer could have believed that his actions were lawful. He did not do so; he merely suggested that he acted in good faith.
 
 
 25
 The only portion of Reyes' documents filed before this court and the district court that could be construed as carrying his burden was his statement in his memorandum opposing summary judgment for DeNieva that he believed that his actions were authorized, and that "his belief was reasonable, subjectively and objectively." This bare assertion of objective reasonableness, without any legal or factual support, cannot be construed as establishing either a disputed question of material fact or the existence of qualified immunity as a matter of law. Thus the district court did not err in ruling that DeNieva was entitled to summary judgment on the issue of Reyes' qualified immunity.
 
 
 26
 III. The District Court's Exclusion of Testimony About DeNieva's Ability to Travel
 
 
 27
 During the trial on DeNieva's damages, Reyes sought to introduce testimony allegedly indicating that DeNieva could have gone to the Philippines without her passport. The district court allowed the witness (a supervisor for Continental Airlines) to testify outside the presence of the jury. She stated that on one occasion the airline had allowed a passenger who lacked a passport to fly to the Philippines, but that the passenger had had a notarized document from the Philippine Consulate. She further testified that, in her experience, no one had been allowed on board with only a birth certificate.[6] The district court excluded this testimony, ruling that it was more prejudicial than probative. Reyes argues that the district court should have admitted the testimony, because it demonstrated that Reyes' retention of DeNieva's passport did not prevent her from returning to the only country that she identified as a desired destination.
 
 
 28
 We review the district court's exclusion of the testimony for abuse of discretion. Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc., 875 F.2d 1369, 1378 (9th Cir.1989). The testimony at issue was only marginally relevant to the amount of DeNieva's damages, as there was no testimony establishing that she could have obtained the necessary authorization within the 11-day period that Reyes retained her passport before her arrest. In fact, the testimony indicated that it would have been difficult for her to return to the Philippines, as her birth certificate apparently would not have been sufficient. Moreover, the testimony could have been prejudicial, as it could have led the jury to question the district court's summary judgment ruling that Reyes had violated DeNieva's constitutional rights. Given the potential for prejudice and the minimal probative value, we find that the district court did not abuse its discretion in excluding this testimony.IV. Sufficiency of the Evidence in Support of the Damage Award
 
 
 29
 Reyes' final challenge is that the evidence did not support the jury's award of $50,000 in damages to DeNieva. He contends that DeNieva failed to present evidence of damages suffered during the 11-day period, because her damages could have arisen during the subsequent detention for three months.
 
 
 30
 We "do[ ] not disturb an award of damages on appeal unless it is clearly unsupported by the evidence or is 'grossly excessive, monstrous, or shocking to the conscience.' " Benigni v. City of Hemet, 879 F.2d 473, 480 (9th Cir.1988) (quoting Chalmers v. City of Los Angeles, 762 F.2d 753, 760 (9th Cir.1985)). In this case, DeNieva's testimony indicated that she had suffered emotional distress and physical trauma (e.g., insomnia, dizziness, vomiting) during the 11-day period, and Reyes failed to present evidence that indicated otherwise. In light of DeNieva's uncontroverted testimony, the jury's award is neither unsupported by the evidence nor grossly excessive.
 
 CONCLUSION
 
 31
 The district court lacked jurisdiction over DeNieva's claims against the CNMI and Reyes in his official capacity, but it did have jurisdiction over Reyes in his individual capacity. With respect to the judgment against Reyes, the district court did not err in ruling against Reyes on summary judgment, it did not abuse its discretion in excluding evidence regarding DeNieva's potential ability to leave the CNMI, and the damage award was not grossly excessive.
 
 
 32
 The judgment against Reyes in his individual capacity is affirmed. The judgment, insofar as it runs against the CNMI, is reversed.
 
 
 33
 AFFIRMED in part; REVERSED in part.
 
 
 34
 Costs to be borne by defendant Reyes.
 
 
 
 [1]
 The existence of jurisdiction is a question of law that we review de novo. United States v. Moncini, 882 F.2d 401, 403 (9th Cir.1989)
 
 
 [2]
 " '[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.' ... [T]he plaintiff in a personal-capacity suit need not establish a connection to governmental 'policy or custom,'...." Hafer, 112 S.Ct. at 362 (quoting Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)) (emphasis in Graham )
 
 
 [3]
 The Supreme Court stated in Will that the limitation on suits against officers in their official capacity applies only to suits for damages, because " 'official-capacity actions for prospective relief are not treated as actions against the state.' " 491 U.S. at 71 n. 10, 109 S.Ct. at 2311 n. 10 (quoting Graham, 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14.) DeNieva did not request prospective relief, so this distinction does not apply here
 
 
 [4]
 In light of this ruling, we do not reach CNMI's sovereign immunity argument
 
 
 [5]
 We review de novo the district court's denial of a defense of qualified immunity, and we review the evidence in the light most favorable to the nonmoving party. Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991)
 
 
 [6]
 She also stated that the airline required approval from immigration authorities, but she did not clarify whether she meant CNMI immigration (i.e., Reyes) or Philippine immigration