111 F.3d 139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Barbara WARREN, individually and as the Representative of
the Estate of Gregory Warren; Leona Warren,
Plaintiffs-Appellants,
v.
The LAS VEGAS METROPOLITAN POLICE DEPARTMENT; Brian
Alexander De Becker, individually and in official
capacity; Steve Wayne Borden,
individually and in his
official capacity,
Defendants-Appellees.
 No. 96-15403.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1997.
Decided April 15, 1997.
 
 Before: REINHARDT, HALL, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The district court decided that defendant-appellee officers De Becker and Borden were entitled to qualified immunity and that defendant-appellee Las Vegas Metropolitan Police Department ("LVMPD") was not liable because there was no constitutional violation; accordingly, it granted summary judgment in favor of defendants. We have jurisdiction, 28 U.S.C. § 1291, and we AFFIRM.
 
 
 3
 Qualified immunity protects government officials from liability when they perform discretionary functions, so long as their actions "could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The right allegedly violated here was the Fourth Amendment right to be free from unreasonable searches and seizures, including the right to be free from the unreasonable use of deadly force. See, e.g., Tennessee v. Garner, 471 U.S. 1, 9 (1985). In the context of determining qualified immunity for officers who use deadly force, the same reasonableness requirement that applies on the merits applies to the qualified immunity determination. Hopkins v. Andaya, 958 F.2d 881, 885 n. 3 (9th Cir.1992) (citations omitted). The issue is whether a reasonable officer could have believed that the conduct here was lawful, given the clearly established Fourth Amendment rights. DeNieva v. Reyes, 966 F.2d 480, 484-85 (9th Cir.1992).
 
 
 4
 At oral argument, plaintiffs' counsel conceded that the act of shooting Warren when he lunged at the officers was a judgment call, and that the shooting itself did not constitute an unreasonable use of deadly force. Instead, plaintiffs claim that the cumulative actions leading up to the shooting were unreasonable. They contend that the officers unconstitutionally exacerbated the situation, ultimately causing Warren to lunge at the officers, which in turn caused officers Borden and DeBecker to shoot Warren.
 
 
 5
 We conclude that the officers' actions preceding the shooting did not rise to the level of a constitutional violation. Courts determine Fourth Amendment reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). In determining whether an officer acted reasonably, this court "must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving...." Scott v. Heinrich, 39 F.3d 912, 914 (9th Cir.1994) (citation omitted).
 
 
 6
 Under this standard, the officers' decisions under the circumstances were reasonable. The officers initially stopped Warren in response to two separate 911 calls reporting a man threatening people with a weapon. When officers Borden and Holman first attempted to stop Warren, Warren had lunged at officer Holman with his knife. During the arrival of backup officers, a crowd gathered at the scene. At some point during the incident, civilians were inside the apartments behind Warren. Despite police officers' repeated warnings to drop the weapon and to calm down, Warren continued to brandish the knife, and he threatened to kill a police officer.
 
 
 7
 Given these circumstances, plaintiffs have not shown that the officers acted unreasonably. The fact that the police officers did not maintain a distance of 21 feet from Warren--the distance recommended by LVMPD's training tape--does not establish liability. Police guidelines have no legal relevance to the reasonableness of the officers' actions unless "one of [the guidelines'] purposes is to protect the individual against whom force is used." Scott, 39 F.3d at 915-16. Because the logical purpose of this policy is to protect officers from suspects who brandish weapons, the 21 foot policy is legally irrelevant.
 
 
 8
 Even if the policy is for the protection of people like Warren, it is only one factor relevant to the total reasonableness of the officers' actions. The evidence does not establish exactly how close the officers stood to Warren at any given time. The videotape distorts the actual distance, and the various officers testified that throughout the incident, they were anywhere from 5 to 25 feet away from Warren. Also, Warren kept moving back and forth, continuously changing the distance between himself and the officers. In this situation, the officers may have needed to stand closer than 21 feet to Warren in order to protect the civilians who were gathering at the scene and any civilians who may have been inside the apartments, especially since the 911 calls reveal that Warren had already threatened civilians. Thus, plaintiffs have not shown that the officers acted unreasonably by standing closer than 21 feet to Warren.
 
 
 9
 Likewise, the presence of the police dog does not establish liability. Officer Duerden, the officer responsible for the police dog, stated that in his judgment the police dog could not have been practically used in the short time he was at the scene. Had Warren not lunged towards the officers when he did, the police dog might have been a viable means of disarming Warren prior to using deadly force. The canine's presence was not unreasonable.
 
 
 10
 The plaintiffs present no evidence to contradict the conclusion that, given the circumstances, the officers acted reasonably. The Kirkham affidavit offers no specific facts to support its opinions and is entirely conclusory. As such, it is insufficient to defeat defendants' summary judgment motion. See United States v. Various Slot Machines on Guam, 658 F.2d 697, 700-01 (9th Cir.1981).
 
 
 11
 Finally, the potential viability of alternative actions cannot establish liability. Although there is some evidence that "Capstun" is sometimes a useful tool for officers to use, this evidence is irrelevant. This court has held that police officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable." Scott, 39 F.2d at 915. There is no evidence that the officers here even had Capstun at their disposal during this emergency situation. Their actions fell within the range of reasonable behavior.
 
 
 12
 This court's hindsight is not the standard we use to judge the officers' decisions. The officers were responding to an emergency situation, created by Warren, and used the means available at the time. The officers attempted to calm Warren and persuade him to drop the weapon; they did not resort to deadly force until it was necessary to defend themselves. They acted reasonably under the circumstances and are thus entitled to qualified immunity for their actions.
 
 
 13
 Municipal liability is contingent on a violation of constitutional rights. Scott, 39 F.3d at 916. Because the officers' actions were reasonable, there is no constitutional violation, and the police department is not liable.
 
 
 14
 Plaintiffs challenge the district court's dismissal of its pendant state law claims. Once the district court decided to grant summary judgment for defendants, its decision to decline jurisdiction over the pendent state claims was reasonable and was not a clear error of judgment. See Brady v. Brown, 51 F.3d 810, 816 (9th Cir.1995).
 
 
 15
 The district court's decision to grant summary judgment for defendants is AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 16
 I dissent. The officers stated that they surrounded Warren at a distance of only six to eight feet. They made no attempt to subdue him by means short of deadly force during the more than ten minutes when he was backed up against the wall.[1] Nor did the officers simply retreat a number of feet so that they would be able to respond to a sudden movement by Warren in a manner that was proportionate to any actual threat his conduct might represent. Finally, the officers brought the police dog on the scene and kept it there, although their sworn statements show that they recognized that the dog's presence was highly disturbing to Warren. In my view, this case is not an easy one, and cannot properly be resolved at summary judgment.
 
 
 17
 Defendants conceded at oral argument that the police dog was not trained to seize or disarm people and that the only purpose in using it was to make an even greater show of force than was already made by the circle of officers with their weapons raised. The videofilm shows that the officers allowed the dog inside the six to eight foot perimeter so that it came extremely close to Warren, despite the fact that, in Officer DeBecker's words, the dog "was going crazy" and was further agitating Warren. As Officer Borden describes what transpired, Warren "just went crazy" when the dog arrived on the scene. Subsequently, according to Borden, Warren "turned towards [defendants] and turned towards the dog," and, after defying the officers' instruction to back up, ran at the officers with his knife raised, resulting in Borden and DeBecker's shooting him.
 
 
 18
 The majority theorizes that the officers "may have needed to stand closer than 21 feet to Warren in order to protect the civilians who were gathering at the scene and any civilians who may have been inside the apartments...." Although there is evidence in the record suggesting that Warren may have threatened one or more passers-by shortly before the officers arrived on the scene, there is no evidence that he presented any danger to persons inside the apartment building. As for the onlookers, it is for a jury and not this court to decide whether it was reasonable for the officers to allow them to assemble where they did, and whether the location of the onlookers prevented the officers from maintaining the prescribed distance from Warren. Moreover, while the majority is correct that a "logical purpose" of the training tape's directive to maintain a distance of at least twenty-one feet from a suspect armed with a knife "is to protect officers from suspects who brandish weapons," a question of material fact exists as to whether that purpose is the sole and exclusive one supporting the policy.
 
 
 19
 Whether or not the tape by itself is sufficient to raise a genuine issue of material fact as to whether the officers' conduct in positioning themselves so close to Warren was unreasonable, a jury could so conclude in light of the totality of the circumstances, and particularly in light of the facts that the defendants: (1) cornered Warren, a highly agitated and emotionally disturbed individual, for at least ten minutes by drawing their weapons and stationing themselves approximately six to eight feet distant; (2) permitted the dog to agitate Warren even further, thus escalating the confrontation significantly; (3) failed to take any meaningful steps to ease the crisis or subdue Warren by peaceful means; and (4) were or should have been aware that the tactics they employed might well cause Warren to act precipitously, with the likely consequence that one or more officers would resort to the use of deadly force.
 
 
 20
 These circumstances, collectively, raise a genuine issue of material fact as to whether the defendants acted unreasonably with respect to the tactics they employed, and as a result ultimately felt compelled to use deadly force that would not otherwise have been necessary. The factual dispute precludes summary judgment for the officers both on the merits and on their qualified immunity claim. See Alexander v. City of San Francisco, 29 F.3d 1355, 1366-67 (9th Cir.1994).
 
 
 21
 Because I would reverse and remand as to the excessive force claim, I would do likewise with respect to the municipal liability and supplemental state law claims.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The majority is correct that the officers were not required to avail themselves of the least intrusive means in order to satisfy the reasonableness requirement of the Fourth Amendment. That does not mean, however, that the determination of whether their conduct was reasonable must be utterly divorced from consideration of the alternatives open to them at the time. This court need not and should not endorse the use of deadly force merely because it was one of the available methods by which, reasonably or unreasonably, the officers could have subdued Warren. See Hopkins v. Andaya, 958 F.2d 881 (9th Cir.1992)
 In that connection, I note that, according to an instructor at the municipal defendant's police academy, "Capstun," a pepper spray used by Las Vegas police officers, is absolutely effective in incapacitating suspects at distances of ten feet or less.