**Wang Zong XIAO, Plaintiff,**

v.

**Janet RENO, in her capacity as Attorney General of the United States, et al., Defendants.**

**No. C–90–0350 WHO.**

United States District Court, N.D. California.

May 1, 1997.

Cedric C. Chao, Ruth N. Borenstein, Sue C. Hansen, Morrison & Foerster, San Francisco, CA, for Plaintiff.

Michael Yamaguchi, U.S. Atty., Stephen L. Schirle, Chief, Civ. Div., Alberto E. Gonzales, Sp. Asst. U.S. Atty., San Francisco, CA, Janet Reno, Atty. Gen., Frank W. Hunger, Asst. Atty. Gen., Gary G. Grindler, Deputy Asst. Atty. Gen., Civ. Div., Washington, DC, Mark C. Walters, Asst. Director, Christine Bither, Michael Y.F. Sarko, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, DC, for Defendants.

## ORDER

ORRICK, District Judge.

Plaintiff's motion to obtain travel documents came before the Court on March 13, 1997. The Court, having considered the pleadings, and having had the benefit of oral argument of counsel, denies the motion for the reasons stated by the Court at the hearing, and for the reasons that:

1. A preliminary question raised by the government is whether the recent passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("Act"), Pub.L. 104–208, 110 Stat. 3009 (Sept. 30, 1996), divests this Court of jurisdiction over this case. The government does not point to any specific provision in the Act, but the Court's reading of the lengthy enactment reveals one passage applicable to the government's argument concerning this Court's jurisdiction. That provision reads:

(g) *Exclusive Jurisdiction*

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. 104–208, § 306(a)(2), now codified at 8 U.S.C. § 1252(g) (Supp.1997). The Act further provides that its jurisdiction-stripping provisions apply retroactively. *See id.* at § 306(c) (codified at 8 U.S.C. § 1252 Note).

2. The final words of § 306(a)(2), however, limit the scope of the provision to proceedings and orders "under this chapter." "This chapter" refers to Chapter 12 of Title 8 entitled "Immigration and Nationality." *See* 8 U.S.C. § 1101 *et seq.* (1970) The Court did not retain jurisdiction to review any decision or action of the government with regard to its adjudication under the Title 8. Thus, the Act does not divest the Court of jurisdiction over this matter. Rather, as the Court of Appeals found, this Court's jurisdiction arose from its power to redress the government's due process violations. *Wang Zong Xiao v. Reno,* 81 F.3d 808, 816 (9th Cir.1996). Thus, the Act does not divest the Court of jurisdiction over this matter.

3. With the jurisdictional question resolved, the Court can turn to the merits of plaintiff's motion. The Court's October 6, 1993 Opinion and Order permanently enjoined the government from taking steps to remove plaintiff from the United States or to return him to the custody of the People's Republic of China, *see Wang Zong Xiao v. Reno,* 837 F.Supp. 1506, 1564 (N.D.Cal.1993), *aff'd, Wang Zong Xiao,* 81 F.3d at 820, but it did nothing to create travel rights for him beyond those possessed by any other alien in the United States. The Court is fully cognizant that the right of a citizen to travel is considered a "liberty interest that is protected by the Due Process Clause of the Fifth Amendment." *DeNieva v. Reyes,* 966 F.2d 480, 485 (9th Cir.1992) (citations omitted). Wang, however, is not a citizen. He is an alien and an alien's "right to travel temporarily outside the United States is subject to restrictions not applicable to citizens." *Harisiades v. Shaughnessy,* 342 U.S. 580, 586–87 n. 10, 72 S.Ct. 512, 517 n. 10, 96 L.Ed. 586 (1952) (citation omitted), *reh'g denied,* 343 U.S. 936, 72 S.Ct. 767, 96 L.Ed. 1344 (1952). All aliens must pursue an asylum claim with the Immigration and Naturalization Service ("INS") prior to obtaining refugee status for purposes of obtaining a Refugee Travel Document, as plaintiff desires. *See* Asylum Procedures, 62 Fed.Reg. 10312, 10352 (1977) (to be codified at 8 C.F.R. § 223.2(b)(2)) (1996) (requiring alien to hold valid refugee or asylum status to be eligible for a Refugee Travel Document). Plaintiff, however, has not applied for asylum. Similarly, any other alien would have to apply to the INS for Advance Parole prior to obtaining a Multiple–Entry Advance Parole document. *See* 8 C.F.R. § 223.2(a) (describing Advance Parole application procedure). Plaintiff has not done so.

4. Congress created the INS in part to promulgate such regulations as those cited above to implement the provisions of Title 8. *Cf.* 8 U.S.C. § 1551 (1970 & Supp.1997). Courts have long expressed a reluctance to become entangled in an area of policy better left to the discretion and flexibility of the legislative and executive branches. As noted in *Harisiades:*

It is pertinent to observe that any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the

political branches of government as to be largely immune from judicial inquiry or interference.

*Id.* at 342 U.S. at 588–89, 72 S.Ct. at 519 (footnote omitted). Many of the concerns expressed by the *Harisiades* Court have pertinence here. The prospect of plaintiff traveling between the United States and Asia, free of virtually any INS oversight, creates troublesome complications for the executive branch's exercise of its law enforcement and foreign affairs powers. A decision by this Court to order the issuance of travel documents would also create administrative headaches for the INS, insofar as that agency would have to process documents for which the bearer would have no qualification, and border officials would have to verify the authenticity of the same. It would also require the Court's continued supervision to ensure the repeated issuance of the Refugee Travel Documents each year that plaintiff wishes to travel abroad, *cf.* 8 C.F.R. § 223.3(a)(2) (limiting period of validity of Refugee Travel Document to one year), and to sort out administrative conflicts that might arise with the use of these documents.

5. Although some legal basis exists for a judicial mandate of the issuance of such documents in the Court's "inherent supervisory power" over the treatment of witnesses, *see Wang Zong Xiao,* 81 F.3d at 820, prudence dictates that the Court refrain from treading on turf best governed by the political branches. If plaintiff seeks to travel abroad, he should exhaust those administrative remedies provided by the INS and Congress.

Accordingly,

IT IS HEREBY ORDERED that plaintiff's motion to obtain travel documents is DENIED.