**William Jackson KITCHENS,**
**Plaintiff–Appellant,**

v.

**Richard PIERCE, Sheriff; Margaret Mims, Asst. Sheriff; Gary Johnson, Lieutenant, Classification; Monica Mueller Garcia; Derrick Watkins; Nora Varela, Defendants–Appellees.**

No. 10–15737.

United States Court of Appeals,
Ninth Circuit.

Jan. 14, 2014.

William Jackson Kitchens, Coalinga, CA, pro se.

Rosemary T. McGuire, Esquire, Leslie M. Dillahunty, Weakley, Ratliff, Arendt & McGuire, L.L.P., Matthew Edward Fletcher, Esquire, Todd William Baxter, Esquire, Scott M. Reddie, McCormick Barstow, LLP, Fresno, CA, for Defendants–Appellees.

D.C. No. 1:05–cv–01567–DCB, Eastern District of California, Fresno.

Before: WALLACE and BEA, Circuit Judges, and RESTANI, Judge.*

---

* The Honorable Jane A. Restani, Judge for the U.S. Court of International Trade, sitting by designation.

## ORDER AMENDING MEMORANDUM

The memorandum disposition filed June 14, 2013 is hereby amended. An amended disposition is filed concurrently with this order.

With these amendments, Judge Bea and Judge Restani have voted to deny the petition for panel rehearing. Judge Wallace's dissent from the denial of panel rehearing is attached hereto. Judge Bea has voted to deny the petition for rehearing en banc, and Judge Restani has so recommended. Judge Wallace recommends en banc rehearing.

WALLACE, Circuit Judge, dissenting from the denial of the petition for rehearsing.

In the amended memorandum disposition, the majority asserts that "[b]ecause no policy from 'higher authority' specified how SVPs housed in Isolation or the Hole must be treated, a question of material fact exists as to Mims' authority to affect the conditions afforded to SVPs in those locations." In reaching this conclusion, the majority errs both procedurally and substantively. As to the first, there is no "question of material fact," because Kitchens presented *no evidence* before the district court as to Mims's putative "authority" over these conditions. Consequently, the district court was correct to grant summary judgment to Mims on this issue. As to the second, the panel errs by holding, in effect, that Mims may be held liable under a theory of *respondeat superior* for the actions of jail employees under her supervision. This runs contrary to *Ashcroft v. Iqbal,* in which the Supreme Court held that "[g]overnment officials may not be held liable for the unconstitutional con-

duct of their subordinates under a theory of *respondeat superior*." 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). For both of these reasons, I dissent from the denial of the petition for rehearing.

## I.

Before the district court, Kitchens made the unsupported assertion that Mims, as Assistant Sheriff, was "empowered with the authority to effectuate policies and procedures within the [jail] facility." The district court rejected this argument on the ground that Kitchens had "offered no evidence that Sheriff Mims effectuated any policies or procedures related to inmate classification when she was Assistant Sheriff."

In its discussion of this issue, the district court considered a *pro se* pleading filed by Kitchens. In that pleading, which Kitchens made in support of his motion for summary judgment, Kitchens asserted that Mims "was empowered with the authority to effectuate policies and procedures within the [jail] facility." This was a verified pleading, insofar as Kitchens signed it and declared that it was true "under the penalty of perjury." Mims did not herself present any evidence as to this issue. Instead, she argued that Kitchens had failed to present any evidence to raise a triable issue of fact as to this claim, and therefore that summary judgment in her favor was appropriate.

Because Kitchens did not allege any *facts* to substantiate his assertion regarding Mims's authority, the district court's summary judgment in favor of Mims as to this issue could have been affirmed on that ground alone. *See, e.g., Waggy v. Spokane Cnty. Wash.*, 594 F.3d 707, 713–14 (9th Cir.2010) (explaining that the district court "did not err in granting summary judgment" against a plaintiff who had "failed to allege any facts supporting [his] claim" that the defendant had a "policy, practice, or custom that was violative of his rights"). Under our precedents, a party cannot establish a disputed question of material fact, and thereby avoid summary judgment, by making a "bare assertion" that is devoid of "any legal or factual support." *DeNieva v. Reyes*, 966 F.2d 480, 486 (9th Cir.1992).

This rule applies to *pro se* litigants, like Kitchens, just as much as it applies to any other party. Our decision in *Jones v. Blanas*, 393 F.3d 918 (9th Cir.2004), is not to the contrary. In *Jones*, we held that when a litigant appears *pro se*, the court "must consider as evidence ... all of [his] contentions offered in motions and pleadings, where such contentions are based on *personal knowledge* and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Id.* at 922–23 (emphasis added). It is important to recognize that this is a narrow exception to the general rule that a nonmoving party may survive summary judgment only if he presents evidence of "sufficient caliber and quantity" to create a genuine issue of material fact. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.1989), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In particular, this exception *solely* applies if the *pro se* litigant's contentions are based on "personal knowledge." In *Jones*, we considered a free exercise claim brought by a *pro se* litigant. The district court had granted summary judgment to the defendants, on the ground that the plaintiff had failed to explain how a "general denial of access to religious services" denied him the "ability to practice his own religion." *Jones*, 393 F.3d at 935. We reversed summary judgment as to this

claim, on the ground that the plaintiff "was pro se and concluded [a pleading] with a signed statement attesting under penalty of perjury to [its] truth," which meant that his "explanation of his religious beliefs qualifie[d] as evidence for the purpose of opposing a summary judgment motion." *Id.*

*Jones* cited three cases on behalf of the proposition that a *pro se* litigant's verified pleadings may constitute evidence at summary judgment, if they are "based on personal knowledge." *Id.* at 923. First, in *McElyea v. Babbitt,* we likewise considered a *pro se* litigant's free exercise claims regarding practice of his religion in prison. 833 F.2d 196, 197 (9th Cir.1987). There, the evidence considered by the court consisted of the prisoner's allegations that "regular Sabbath services" were not held in his prison, that he did not receive a kosher diet in prison, that the religious library did not "contain Jewish reading material," and that he was "refused permission to attend a special High Holy Day service." *Id.* at 198–99. Second, in *Johnson v. Meltzer,* we considered a litigant's assertions regarding statements that had been made to him personally by a deputy. 134 F.3d 1393, 1399–1400 (9th Cir.1998). Finally, in *Schroeder v. McDonald,* we also considered a litigant's assertions regarding two statements that had been made to him personally by "correctional staff members at [his] minimum security facility." 55 F.3d 454, 460 (9th Cir.1995).

Thus, in all four of these cases, the assertions "consider[ed] as evidence" by us were things that were truly within the *pro se* litigant's "personal knowledge," either because (1) they were statements about his own religious beliefs; (2) they were state- ments about facts of his daily life in prison; or (3) they were statements of what he had been told by another person. This makes sense. It is unclear, for instance, what evidence a *pro se* litigant could offer regarding his own religious beliefs other than a statement, signed under penalty of perjury, of what those beliefs are.

Our cases addressing this "personal knowledge" exception for *pro se* litigants derive from earlier cases interpreting Fed. R.Civ.P. 56(e), which—in a previous version—stated that a party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial" in the form of "affidavits or as otherwise provided in this rule." [1] *See Lew v. Kona Hosp.,* 754 F.2d 1420, 1423 (9th Cir.1985). As we explained in *Lew,* a litigant's verified complaint may be "treated as an affidavit" for purposes of opposing a motion for summary judgment, so long as "the complaint is based on personal knowledge and sets forth facts admissible in evidence *and* to which the affiant is competent to testify." *Lew,* 754 F.2d at 1423 (citation omitted) (emphasis added). Again, this makes sense. If, for instance, the plaintiff in *Jones* had been called to testify at trial as to his own religious beliefs, he surely would have been competent to do so.

By contrast, if Kitchens were called to testify at trial as to Mims's "authority to effectuate policies and procedures" at the Fresno County Jail, what could he possibly say that would be admissible in court? It is clear that Kitchens would not be competent to testify as to Mims's authority within the jail, because he has no "personal knowledge" of what Mims was "empow-

---

1. In 2010, Rule 56 was reorganized: some aspects of what was formerly Rule 56(e) were transferred to Rule 56(c), while others were "relocated or omitted." *See, e.g., Jajeh v.* *Cnty. of Cook,* 678 F.3d 560, 567–68 (7th Cir.2012) (discussing the revisions). This reorganization does not affect the issues under consideration here.

ered with the authority to effectuate" there.

A *pro se* litigant may assert any number of things in his pleadings, "verified" or not. He may assert that Freemasons run the country, that the moon is made of green cheese, or that all Cretans are liars. But, because he would lack "personal knowledge" of the truth of any of those assertions, we would not treat them as *evidence* sufficient to defeat a summary judgment motion. In the same way, Kitchens, as a detainee who was briefly held in the Fresno County Jail, lacks any personal knowledge of that jail's bureaucratic hierarchy or the "authority" invested in its various officials. Therefore, his assertions as to this matter cannot be regarded as evidence of sufficient "caliber and quantity" to create a genuine issue of material fact.

## II.

But even if Kitchens had presented admissible evidence of Mims's authority within the jail, which he has not, he would still not be able to establish liability. In essence, Kitchens's claim against Mims is based on *respondeat superior,* because the claim is not based on any action undertaken by Mims, but instead is based on what was done by jail employees under her supervision. Such a claim is necessarily predicated on the theory of *respondeat superior.*

However, the Supreme Court, in *Ashcroft v. Iqbal,* has made clear that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). As the Supreme Court explained in *Iqbal,* "vicarious liability is inapplicable" to suits—like Kitchens's—that are brought under section 1983. *Id.* Instead, a plaintiff bringing a section 1983 action "must plead that each

Government-official defendant, through the official's *own individual actions,* has violated the Constitution." *Id.* (emphasis added).

Our court has been reluctant to apprehend *Iqbal's* clear teaching that government officials may not be held liable under a theory of *respondeat superior. See, e.g., Maxwell v. Cnty. of San Diego,* 697 F.3d 941, 962–63 (9th Cir.2012) (Ikuta, J., dissenting) (explaining that, under *Iqbal,* the defendants could not be held liable for the "allegedly unconstitutional acts of their subordinates"); *OSU Student Alliance v. Ray,* 699 F.3d 1053, 1079–80 (9th Cir.2012) (Ikuta, J., dissenting) (explaining that "to state a claim under § 1983 against a government official, a plaintiff must allege that the official's 'own misconduct' violated the plaintiff's constitutional rights") (citation omitted); *Williams v. Cnty. of San Mateo,* 487 Fed.Appx. 344, 346–47 (9th Cir.2012) (Ikuta, J., dissenting) (explaining that the "Supreme Court has made it clear that government officials are not liable for the misdeeds of their subordinates"); *Starr v. Cnty. of Los Angeles,* 659 F.3d 850, 854–55 (9th Cir.2011) (O'Scannlain, J., dissenting from the order denying rehearing en banc) (explaining, in a dissent joined by seven other judges, that the majority had erred by effectively "inserting *respondeat superior* liability into section 1983 despite the Supreme Court's admonition" to the contrary in *Iqbal* ). I join my voice to this chorus.